## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ST. JUDE MEDICAL S.C., INC.,

        Plaintiff,

v.

THOMAS M. TORMEY, JR.,       **MEMORANDUM OF LAW & ORDER**
                            Civil No. 11-327 (MJD/TNL)

        Defendant and
        Counterclaim Plaintiff,

TORMEDCO, INC.,

        Counterclaim Plaintiff.

---

Carrie L. Hund, Edward F. Fox, and Peter L. Gregory, Bassford Remele, PA, Counsel for Plaintiff.

Dwight G. Rabuse, Erin E. Neils, and Joshua P. Brotemarkle, Rabuse Law Firm, P.A., Counsel for Defendant and Counterclaim Plaintiff Thomas M. Tormey, Jr. and Counterclaim Plaintiff Tormedco, Inc.

---

## I.     Introduction

This matter is before the Court on Plaintiff St. Jude Medical S.C., Inc.'s

renewed motion for summary judgment [Docket No. 135] and motion to exclude

testimony of Stephen Larson and Stephen Donelli [Docket No. 127].  The Court

heard oral argument on April 19, 2013.  For the reasons that follow, the Court

grants in part and denies in part Plaintiff's renewed motion for summary

judgment and grants in part and denies in part Plaintiff's motion to exclude.

## II.   BACKGROUND

### A. Brief Factual Background

The facts of this case are laid out in detail in the Court's January 26, 2012

Order on summary judgment.  [Docket No. 47]  Briefly, this case arises out of

Defendant Thomas Tormey's employment as a sales representative for Plaintiff

St. Jude Medical S.C., Inc. ("St. Jude").  St. Jude and Tormey entered into several

employment-related agreements in 2001.  In May 2004, St. Jude terminated

Tormey's employment for failure to meet sales quotas.  Tormey maintains that

following his termination, St. Jude's Vice President proposed a walkaway deal

where Tormey agreed not to pursue litigation against St. Jude and St. Jude would

waive repayment of a $650,000 loan issued to Tormey.  St. Jude denies that such

an agreement was ever struck and maintains that Tormey remained obligated to

repay the $650,000 loan.

### B.  Procedural Background

After unsuccessful negotiations with Tormey, St. Jude filed this suit in

Minnesota state court against Tormey and Tormedco, seeking to recover $650,000

2

plus statutory interest.  Tormey removed the case to this Court, and he has

asserted several counterclaims based on his allegations that St. Jude failed to

abide by its obligations as set out in the various agreements.

St. Jude moved for summary judgment to enforce the Promissory Note and

for dismissal of Tormey's counterclaims before the close of discovery.  On

January 26, 2012, the Court denied St. Jude's motion because genuine issues of

material fact existed.

St. Jude renewed its motion for summary judgment in February 2013

following the close of discovery.  St. Jude again moved for summary judgment to

enforce the Promissory Note and for dismissal of Tormey's counterclaims.  At

that time, St. Jude also moved to exclude two experts retained by Tormey.

## III.    SUMMARY JUDGMENT MOTION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Id. at 323.  Summary judgment is only appropriate when

"there is no dispute of fact and where there exists only one conclusion."

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted.  Id.  "[I]n ruling on a motion

for summary judgment, the nonmoving party's evidence 'is to be believed, and

all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

### B.    Tormey's Counterclaims[1]

St. Jude has renewed its motion for summary judgment on Tormey's

counterclaims.  St. Jude argues that Tormey's counterclaims are untimely and

that the counterclaims based on St. Jude's alleged contract breaches cannot

succeed on the merits.

---

[1]    As noted in the Court's January 26, 2012 Order denying St. Jude's motion for summary judgment, St. Jude argues, and Tormey does not dispute, that since Tormey assigned the Representative Agreement to Tormedco, Tormedco is the proper party to assert breach of contract claims as to the Representative Agreement.  For simplicity, the Court refers to Tormey and Tormedco collectively as "Tormey."  [Docket No. 47]

### 1.  Timeliness

St. Jude terminated the Representative Agreement on May 17, 2004, and

Tormey and Tormedco asserted their counterclaims in February 2011.  Absent an

application of estoppel or equitable tolling, the counterclaims relating to the

Representative Agreement would be barred by the two-year limitation period in

the Representative Agreement <u>and</u> by Minnesota's six-year limitation period.

<u>See</u> Minn. Stat. § 541.05 subdiv. 1(1), (6); <u>Henning Nelson Const. Co. v. Fireman's</u>

<u>Fund Am. Life Ins. Co.</u>, 383 N.W. 2d 645, 650 (Minn. 1986); <u>Singelman v. St.</u>

<u>Francis Med. Ctr.</u>, 777 N.W. 2d 540, 543 (Minn. Ct. App. 2010).

Tormey argues that estoppel applies here because he reached an oral

settlement agreement with St. Jude that provided that both parties would "walk

away" from possible claims after St. Jude terminated the Representative

Agreement.  The Court previously determined that because St. Jude denies that

the parties ever reached such a settlement, there remains a genuine issue of

material fact as to this issue.  [Docket No. 47]  St. Jude continues to deny that the

parties reached an oral settlement agreement and therefore a genuine issue of

material fact remains as to this issue.

St. Jude previously contended and continues to contend that estoppel and

equitable tolling should not apply because Tormey's claimed reliance on any

alleged promise that St. Jude made not to collect on the Loan Agreement was not

reasonable.  The Court previously determined that while Tormey may have a

difficult time proving reasonable reliance, "[w]hether a party's reliance is

reasonable is ordinarily a fact question for the jury unless the record reflects <u>a</u>

<u>complete failure of proof</u>."  <u>Hoyt Props., Inc. v. Production Resource Group,</u>

<u>L.L.C.</u>, 736 N.W. 2d 313, at 321 (Minn. 2007) (emphasis added).  The Court

previously determined that it could not dismiss the counterclaims as untimely

because St. Jude had not shown that there is a complete failure of proof in this

case.

St. Jude maintains in its renewed motion for summary judgment that

Tormey's reliance is unreasonable and that discovery establishes this

unreasonableness.  At least some of the evidence that St. Jude relies on (<u>i.e.</u>, the

notices of imputed income), however, was previously before the Court when it

initially denied summary judgment.  The additional evidence now before the

Court includes: (1) Tormey's deposition testimony that he was offered and

accepted a "walk away agreement" that ended his relationship with St. Jude;

(2) testimony from St. Jude President Jim Gantz that he recalls having a

telephone conversation with Tormey after sending his termination letter but does not remember the substance of the conversation; and (3) testimony from Tormey's accountant Steven Brown regarding conversations with Tormey regarding the forgiveness of the loan.  The evidence that was previously before the Court as well as the evidence adduced during discovery demonstrate that genuine issues of material fact exist and prevent the Court from granting St. Jude's renewed motion for summary judgment.

### 2.  Evidence of Oral "Walk away Agreement"

St. Jude also argues that Tormey's counterclaims should be dismissed and summary judgment for St. Jude is appropriate because Tormey cannot adduce evidence sufficient to sustain a jury's finding of a "walk away agreement" by clear and convincing evidence.

The Court previously rejected this argument and there is no change in the record before the Court that would permit it to grant summary judgment.  The Court reiterates that Tormey certainly may have a difficult time proving the existence of the oral agreement by clear and convincing evidence.  This issue is inherently a fact question for the jury, and the Court cannot conclude that no rational trier of fact could find by clear and convincing evidence that the

underlying agreement was modified by the alleged oral agreement.

### 3.  Merits of the Fraud and Fraudulent Inducement Counterclaims

St. Jude argues that Tormey's Fraud (Count Six) and Fraudulent

Inducement (Count Seven) counterclaims should be dismissed because Tormey

has no evidence to support the essential elements of these claims.  Tormey

concedes that there is no evidence in the record to support these claims.  The

Court therefore grants St. Jude's motion for summary judgment as to Counts Six

and Seven.

### C.    Breach of Loan Agreement

In St. Jude's renewed motion for summary judgment, it again argues that

the Court should determine that Tormey is personally liable under the

promissory note because his affirmative defenses fail as a matter of law.

### 1.  First Breach Defense

The Court previously determined that genuine issues of material fact

persist with respect to Tormey's first breach defense and concluded that St. Jude

was not entitled to summary judgment for breach of the Loan Agreement.

In St. Jude's renewed motion for summary judgment, it argues that

regardless of whether the Loan Agreement and the Representative Agreement

constitute a unitary agreement, the undisputed facts adduced in the course of

investigation and discovery demonstrate that St. Jude did not breach or

improperly terminate the Representative Agreement.  The Court disagrees.

Although it is undisputed that Tormey did not meet the sales quotas, genuine

issues of material fact regarding which party breached first remain for the jury to

resolve.

### 2.  Oral Modification Defense

St. Jude argues that Tormey's oral modification argument is foreclosed by

Minnesota's Statute of Frauds.  St. Jude raised the same argument in its initial

motion for summary judgment.  In its renewed motion for summary judgment,

St. Jude argues that the Eighth Circuit's opinion in Brisbin v. Aurora Loan Servs.,

LLC, 679 F.3d 748, 752 (8th Cir. 2012) establishes that the alleged walkaway

agreement is subject to Minnesota's Statute of Frauds.

The Court previously concluded that it need not reach the question of

whether the alleged "walk away agreement" constitutes a "credit agreement"

and therefore would be foreclosed by Minnesota's Statute of Frauds, because the

Court already concluded that summary judgment is not warranted on account of

Tormey's "first breach" defense and success on that defense would render

Tormey's oral modification defense unnecessary.  The <u>Brisbin</u> opinion does not change the Court's previous decision on this issue.  Because there are genuine issues of material fact regarding the first breach defense, the Court need not reach the merits of the oral modification defense at this time.

In sum, the Court concludes that genuine issues of material fact persist as to Tormey's counterclaims and affirmative defenses.

## IV.    DAUBERT MOTION

St. Jude moves to exclude the testimony of Tormey's expert witnesses Stephen Larson and Stephen Donelli.  Tormey retained Stephen Larson to testify as an expert witness on the issue of Tormey's counterclaim damages.  (Hund Decl., Ex. 1, Expert Witness Report of Stephen Larson at 1.)  Tormey retained Stephen Donelli to testify as an expert who will opine "in the area of the necessity for cardiac device sales representatives to have assistance from a dedicated Technical Services Specialist ("TSS") and the 'duty' of St. Jude to provide a dedicated TSS to cardiac device sales representatives."  (Hund Decl., Ex. 8, Expert Witness Report of Stephen F. Donelli at 1.)

### A. <u>Daubert</u> Standard

The admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  The proponent of the testimony has the burden to show by a

preponderance of the evidence that the testimony is admissible under Rule 702.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001).  Under the Rule:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;
> and
>
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.
>
> Fed. R. Evid. 702.

"Under the framework developed in Daubert, trial courts must serve as

gatekeepers to insure that proffered expert testimony is both relevant and

reliable.  Trial courts are given broad discretion in fulfilling this gatekeeping

role . . . ."  Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (citations

omitted).  The proposed testimony must be useful to the factfinder; the expert

witness must be qualified; and the proposed evidence must be reliable.  Lauzon,

270 F.3d at 686.  "[D]oubts regarding whether an expert's testimony will be

useful should generally be resolved in favor of admissibility."  <u>Miles v. Gen.

Motors Corp.</u>, 262 F.3d 720, 724 (8th Cir. 2001) (citation omitted).

In determining the reliability and relevance of the proffered testimony, the

Court examines factors such as

> whether the theory or technique is subject to testing, whether it has
> been tested, whether it has been subjected to peer review and
> publication, whether there is a high known or potential rate of error
> associated with it, and whether it is generally accepted within the
> relevant community.

<u>Unrein v. Timesavers, Inc.</u>, 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted).

However, "[t]his evidentiary inquiry is meant to be flexible and fact specific, and

a court should use, adapt, or reject <u>Daubert</u> factors as the particular case

demands.  There is no single requirement for admissibility as long as the proffer

indicates that the expert evidence is reliable and relevant."  <u>Id.</u> (citation omitted).

### B.  Stephen Larson

Larson used two models to calculate Tormey's counterclaim damages in

this case.  (Hund Decl., Ex. 1, Larson Report at 2-3 and Attachment 5.)  First,

Larson calculated Tormey's damages "as measured by what he would have

earned had the contract between Tormey and St. Jude been fully performed"

(hereinafter "Damages Based on St. Jude Pro Forma methodology"). (<u>Id.</u> at 2.)
Second, Larson calculated Tormey's damages as measured by what Tormey
"would have earned had he continued his employment with Medtronic instead
of switching to St. Jude" (hereinafter "Medtronic Compensation Estimates
methodology"). (<u>Id.</u> at 3.)

### 1. Whether Larson is Qualified

St. Jude argues that Tormey makes no showing that Larson is qualified to
opine on the lost income or lost profits of an independent sales representative in
the pacemaker and implantable cardiac defibrillator ("ICD") medical device
industry. St. Jude reasons that Larson is not a Certified Public Accountant, but
instead a "self-described career financial professional" who held various
positions in "major companies" where he "became familiar with and worked
with sales personnel who were substantially compensated on a commission or
rewards basis for sales success." (Hund Decl., Ex. 1, Larson Report at 1.) St. Jude
maintains that Larson lacks any experience with the technical medical device
manufacturing and sales industry, and has not been involved in determining
compensation for sales personnel or quantifying damages allegedly caused by
termination of an independent sales representative. (<u>Id.</u>) St. Jude further

maintains that Larson's expert witness experience in providing an opinion regarding damages is limited to three cases, including the current case and was retained by Tormey's present counsel in each of the cases.  (Id. at Attachment 3.)

Although St. Jude raises a number of objections to Larson's qualifications, the Court concludes that those objections go to the weight of his testimony, not its admissibility, and can be adequately addressed on cross examination.  "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."  Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006).  Larson's training and experience in business and finance provides the foundation for him to express his opinion regarding Larson's purported damages.  See, e.g., Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990) ("[A]n individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise.").  Because St. Jude's objections go the weight of the proposed testimony, the Court will deny St. Jude's motion to exclude the testimony of Larson on this basis.

### 2.  Whether Larson's Opinions Are Supported by the Record

If a party believes that an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate.  Even

a theory that might meet certain <u>Daubert</u> factors, such as peer
review and publication, testing, known or potential error rate, and
general acceptance, should not be admitted if it does not apply to
the specific facts of the case.

<u>Concord Boat Corp. v. Brunswick Corp.</u>, 207 F.3d 1039, 1056 (8th Cir. 2000)

(citations and footnote omitted).  However,

[a]s a general rule, the factual basis of an expert opinion goes to the
credibility of the testimony, not the admissibility, and it is up to the
opposing party to examine the factual basis for the opinion in cross-
examination.  Only if the expert's opinion is so fundamentally
unsupported that it can offer no assistance to the jury must such
testimony be excluded.

<u>Bonner v. ISP Techs., Inc.</u>, 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted).

Here, St. Jude argues that Larson's opinion should be excluded because it

lacks factual basis and foundation.  St. Jude maintains that there are two specific

foundational flaws that undermine Larson's damages methodologies.

First, with respect to the "Damages Based on St. Jude Pro Forma"

methodology, St. Jude argues that Larson relied solely on the hypothetical

projections contained in the pro forma prepared in advance of St. Jude hiring

Tormey without looking at the reality of the actual sales for Tormey's 2 ½ year

tenure, or the changes in the cardiac rhythm management ("CRM") market from

2001 through the present.  The parties agree that the pro forma was prepared by

St. Jude based on information provided by Tormey.  St. Jude argues, however,

that these internal projections were based on incomplete information and

represented lofty hypothetical sales hopes rather than actual sales data.  St. Jude

maintains that Larson could and should have analyzed the actual sales data for

Tormey and other St. Jude sales representatives in the territory to calculate

damages.

Second, with respect to the "Medtronic Compensation Estimate"

methodology, St. Jude argues that Larson's analysis is based on speculation and

is not supported by the facts.  St. Jude argues that there is no evidence that

Tormey would have remained employed at Medtronic through 2012 and

achieved continued success.  St. Jude argues that the contemporaneous evidence

(e.g., Medtronic performance evaluation and Tormey's correspondence

threatening a discrimination lawsuit) actually contradicts Larson's conclusion

that Tormey would have remained at Medtronic.  (Hund Decl., Ex. 5, 6.)  St. Jude

also argues that Larson did not review any of Tormey's actual sales data from

Medtronic and instead relied on selected Medtronic performance reviews.

The Court concludes that St. Jude's arguments do not establish that the

basis for Larson's opinions is so unreliable that his testimony should be

excluded.  It is for the jury to decide the accuracy of the facts upon which Larson

relied.  St. Jude can adequately address these issues and any weakness in the

basis for Larson's opinion during the cross examination of Larson.  See Bonner,

259 F.3d at 929-30 (citation omitted) ("[T]he factual basis of an expert opinion

goes to the credibility of the testimony, not the admissibility, and it is up to the

opposing party to examine the factual basis for the opinion in cross-

examination.").

### 3.  Whether Larson's Opinions Are Reliable

St. Jude argues that Larson's opinion should be excluded because his

damages methodologies are not based upon reliable principles and methods that

are generally accepted in the science of lost income.  St. Jude maintains that the

generally accepted and reliable methodology for determining lost income

damages includes a consideration of: future income, growth rates, discount or

interest rates, and probability of employment participation or expected

reasonable retirement age.  (Hund Decl., Ex. 2, Siebasse Report at 5-10.)  St. Jude

further maintains that Larson fails to explain the assumptions and choices he

made.  For example, in his "Damages Based on St. Jude Pro Forma"

methodology, Larson does not explain how he selected the weighted average

commission rate or revenue growth rate.  St. Jude further argues that he fails to explain: (1) why he used the pro forma projections instead of the actual sales data; (2) his assumption that Tormey could not obtain alternative employment; (3) his assumption that Tormey would have remained at Medtronic for another decade; and (4) the inclusion of a $300,000 TSS expense during a period when Tormey would be subject to a non-compete covenant.  St. Jude also notes that Larson has not validly applied his methodology because his calculations are riddled with arithmetic errors.  St. Jude maintains that this would confuse the jury and provide no assistance to the fact finder.  Finally, St. Jude's rebuttal expert faults Larson for not using the "Life, Participation and Employment Model" ("LPE") methodology.

The Court agrees that Larson's analysis fails to explain some of the assumptions that he makes when formulating his opinion.  Larson's analysis, however, is not so fundamentally unsound as to offer no assistance to the jury. St. Jude will have the opportunity to address these assumptions and any other alleged flaws in Larson's analysis during cross examination.  With regard to the LPE methodology, the record before the Court indicates that certain components of the LPE methodology may not be applicable to Tormey's alleged damages.

This issue can also be properly addressed during the cross examination of Larson and St. Jude's own expert.

The many arguments and concerns that St. Judge raises in its motion to exclude Larson can all be properly addressed during cross examination.  The jury can make a credibility determination and determine what weight should be given to his methodology and ultimate conclusions.  Therefore, the Court denies St. Jude's motion to exclude Larson.

### C. Stephen Donelli

St. Jude argues that Donelli's opinion should be excluded because it concerns factual issues that are within the common knowledge of jurors.  St. Jude further argues that courts historically refuse to admit expert testimony explaining matters of law, including the interpretation of contracts.  Loeb v. Hammond, 407 F.2d 779, 781 (7th Cir. 1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge.  In neither case do we permit expert testimony.").  St. Jude also argues that Donelli is not uniquely qualified to provide expert opinion because he has not been involved in the negotiation or preparation of an independent sales representative agreement, he had never reviewed Tormey's Sales Representative Agreement

until it was given to him at his deposition, and he had never seen contract language like "as soon as practicable" until the context of the underlying litigation.  (Hund Decl., Ex. 1, Donelli Dep. 15-16, 18, 31, 33-34, 71-72, 80-82.)

The Court agrees with St. Jude and will grant the motion to exclude Donelli.  Donelli does not offer any scientific, technical, or other specialized knowledge to assist the jury in understanding the evidence or determining a fact in issue.  Donelli is not uniquely qualified to provide the purported testimony regarding the importance of dedicated TSS support for a sales representative. Tormey or any other lay witness can testify to this issue.  Likewise, Tormey or any other lay witness from this industry can testify regarding the role of a TSS. There is no evidence before the Court that the jury will require expert testimony on industry standards or trade practices.  Tormey's argument that the term "as soon as practicable" is a term of art in the medical devise sales industry is not supported by the record.  There is no need to provide expert testimony on this term.  Finally, it is clear from Donelli's deposition that Tormey's counsel wrote the report for Donelli and that the first time he saw a draft of the report was when it was provided to him by Tormey's counsel.  See Butera v. District of Columbia, 235 F.3d 637, 660-61 (D.D.C. 2001) (precluding expert witness from

testifying where attorney prepared the expert's report).

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant St. Jude's Motion for Summary Judgment [Docket No. 135] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. St. Jude's Motion for Summary Judgment [Docket No. 135] is **GRANTED** with respect to Counterclaim Counts Six and Seven;
   b. St. Jude's Motion for Summary Judgment [Docket No. 135] is **DENIED** with respect to all other counterclaims and affirmative defenses;

2. Defendant St. Jude's Motion to Exclude Testimony of Stephen Larson [Docket No. 127] is **DENIED**; and

3. Defendant St. Jude's Motion to Exclude Testimony of Stephen Donelli [Docket No. 127] is **GRANTED**.


Dated:  June 26, 2013                          s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court